The cause came to a hearing, and after argument, Chancellor Rutledge delivered the decree pf the court as follows:
This bill is brought by the assignees of M’Farlane & Player, against the defendants, trustees in a settlement made by Player, previous to his marriage, to set aside the settlement (so far as it respects his own private estate) in favor of the prior claims and rights of complainant and other creditors of M’Farlane & Player, the funds of the copartnership being wholly inadequate to the payment of *268 tbeir debts, and because the said M’Farlane & Player were insolvent at the time of the settlement. The defendant Mr. Trezevant, who was the principal agent in the transaction, by his answer, among other matters, states that his neice referred Mr. Player to him, for his approbation, before she would give him an answer. That having no personal objection to Mr. Player, defendant pro-* posed the settlement, which was afterwards made for the reasons set forth in his answer. That having inquired respecting the situation of M’F. & Player, he understood their credit was good at the banks and custom house; that neither at the time of his engagement, nor even at the time of the marriage, had he any reason to suspect the solvency of M’F. & Player ; that he verily believes the marriage would not have taken place without his consent, and he would not have' consented to it, if the settlement had not been made. That it was not only in consideration of marriage, and to provide for the maintenance and support of his ñeice, and for the issue of the marriage, but also in consideration of the property to which she was entitled. That her property is settled upon terms much more favourable for Mr. Player than his is in her favour. That it was the intention of Player’s father, as expressed in his will, to secure the property he devised to his son, (and which is settled) in such a manner as to place it out of the reach of creditors ; and therefore no more is done by the settlement than was intended by the father; and further that the lands settled are charged by the will with legacies, to the amount of 600/. It was admitted that this transaction was conducted with the utmost fairness, and was totally free from the smallest imputation of fraud. It was nevertheless contended by complainants counsel, that although there was no intention of fraud, yet if the deed was supported, it would operate as a legal fraud with respect to the creditors of M’F. & P. the copartnership being largely indebted at the time, and if not then really insolvent, has since proved to be so; that therefore Player had no right to make the settlement, in as much as it *269 breaks in upon the legal rights of creditors. For defendant it was insisted that M’F. & P. were solvent at the time of the contract, and no subsequent misfortunes ought to operate so as to invalidate it; that even if they were insolvent, and Player knew it, that would not effect the case, defendant not having notice of it, and they being purchasers for a bona fide and valuable consideration without notice. That the creditors trusted to the fund of M’F. & P. and must be paid out of them. Defendants were in nature of private creditors, and their claim was preferable to the copartnership creditors, and must be first satisfied out of the private estate. This case is confessedly stripped of every symptom of fraud; it does not therefore come within the statute of 13 Eliz. As the marriage would never probably have taken place, if it had been contemplated that the legality or validity of the settlement would have been at all controverted, the only question in the case is whether the settlement under all the circumstances of it, is made upon such a consideration as to prevail against creditors. Marriage is not only a bona fide and valuable consideration, but the very highest consideration in law; this court will therefore always support marriage settlements, if there is no particular evidence of fraud made out, shewing an intention to deceive or defraud creditors. In the case before us, referring to the answer of the defendant, Mr. Trezevant, he positively swears that M’F. & P. appeared to be in good circumstances; their credit was good, he was induced to give his consent to the marriage, (without which it would not have taken place) under the strongest conviction of the solvency ofP. and that he was competent to make the settlement which was made.
Whether the house of M’F. & P. were or were not solvent, was a question defendant could not decide, he could only judge from circumstances, and he had no reason, as he has sworn, to suspect that they were insolvent. Besides the property proposed by Player, to be settled, was his own private estate, devised to him by his father, sub *270 sequent to his engaging in trade, and therefore could not have been counted upon by the copartnership creditors to satisfy their demands. Independant of that, defendant on referring to the fathers will, saw that his intention was to secure the property from his sons creditors, for the benefit of his grand children ; and defendant therefore very naturally concluded that such intention would be carried into effect by this court, if applied to for that purpose. The doctrine of setting aside voluntary conveyances and settlements made by persons indebted at the time, is laid down we think on too broad a scale ; for if that was held to be the law, scarce any settlements could be supported in this country, there being few or no per.sons who are not more or less in debt; and if it was to be extended to the actual solvency of the party making the settlement, it might be attended with great difficulty ; for at that rate a man previous to making a settlement, must know to a cent what he owed, and have his estate appraised to ascertain the precise value of it. The situation of mercantile men would be still harder, for they might be worth thousands to day beyond what they were indebted, and a few days hence by unforeseen losses in trade and bankruptcies of their debtors, they might be reduced to beggary. In the application of funds for payment of debts, the partnership effects are always appropriated to paying partnership debts, and the private estate to pay the private debts of the respective partners; the partnership creditors have no specific lien on the private estate of the individual partners. This is a private contract entered into by Player with the trustees, when he was generally believed to be in good circumstances, the consider ration of which is of the highest nature, and not a scintilla of fraud in it. The private fortunes of Player and his intended wife, are mutually pledged as well for the purpose of securing a suitable maintenance and support for them, as for the providing for the issue of the marriage-; and from the evidence offered, it appears the income is not, or is but barely sufficient for that purpose; and when the legacies *271 which are charged on the land are paid, which they must be, the income will be still less.
Prixgle for complainants.
Parker and Ligrtwood for defendants.
Upon the whole, the settlement seems to be both fair F . . . . . . and just; we will not weigh it too nicely; it is a bona fide discharge of amoral duty, and ought to be supported.
Bill must be dismissed with costs.